IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE SCICCHITANO, | : | Civ. No.  4:15-CV-00852 |
| PAMELA BOLLINGER, ROBERT | : | |
| MCANDREW, DAVID | : | |
| YAKOBOSKI, BARRY | : | |
| SCHWEITZER, JAMES BRESSI, | : | |
| and ALBERT BENEDICT | : | |
| | : | (Judge Brann) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF | : | |
| NORTHUMBERLAND, VINNY | : | |
| CLAUSI, and STEPHEN BRIDY, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
June 26, 2015

Pending before this Court is a Motion for a Preliminary Injunction (ECF No.

5) filed by Plaintiffs Dwayne Scicchitano, Pamela Bollinger, Robert McAndrew,

David Yakoboski, Barry Scheitzer, James Bressi and Albert Benedict on May 8,

2015.  Plaintiffs seek injunctive relief to prevent Defendants Northumberland

County, Vinny Clausi, and Stephen Bridy from eliminating the Northumberland

County Department of Weatherization in violation of their First Amendment

freedom of association rights.  Following an expedited briefing schedule, this

matter is now ripe for the Court's consideration.  For the following reasons, the motion will be granted.

## I. BACKGROUND

This case arises from a vote of the Northumberland County Commissioners during a public meeting in April 2015 to eliminate and outsource the County's Department of Weatherization.  During that meeting two of the three county commissioners voted in favor of eliminating the program with the intent to outsource it SEDA-COG, a private entity that administers weatherization services to seven other Pennsylvania counties.  Those two commissioners, Stephen Bridy and Vinny Clausi, have been named as Defendants in this action.  At the time of the evidentiary hearing before this Court, Defendants had not yet entered into a contract with SEDA-COG.

The Plaintiffs in this action are seven employees of the Department of Weatherization, which is a unionized department of Northumberland County.  For the purposes of the instant motion, Plaintiffs assert that Defendant Clausi voted to eliminate the department on the basis of their union activity, which is protected activity under the First Amendment of the Constitution of the United States.  Plaintiffs are seeking a preliminary injunction that would return all parties to the status quo, as if the April 2015 vote had never occurred.  They further request that

this Court order Defendants to apply for funding for the Weatherization Department.

## II. PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).  A party seeking a preliminary injunction must establish four factors: (1) a reasonable probability of success on the merits of their argument; (2) irreparable harm to the movant in the absence of relief; (3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and (4) the public interest favors granting the injunction. *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).

## III. DISCUSSION

### A. Plaintiffs' § 1983 Claim Against the Individual Defendants

Defendants first argue that Plaintiffs are unable to demonstrate a likelihood of success on the merits of their claim under 42 U.S.C. § 1983 because the actions of its two county commissioners, Defendants Clausi and Bridy, enjoy an absolute legislative immunity.  Plaintiffs counter that Defendants' act in voting to eliminate the weatherization department is not entitled to immunity because it was not procedurally legislative; rather, they argue, a procedurally legislative action requires the enactment of an ordinance rather than simply taking a vote.

3

Local legislators are absolutely immune from liability for their legislative activities. *See In re Montgomery County*, 215 F.3d 367, 376 (3d Cir. 2000) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)).  However, to be entitled to legislative immunity, the act taken must be both substantively and procedurally legislative in nature. *See id.* (citing *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir. 1983)). An act is considered substantively legislative if it involves policy-making of a general purpose or line-drawing.  *See Ryan v. Burlington County*, 889 F.2d 1286, 1290 (3d Cir. 1989).  It is procedurally legislative if it is passed "by means of established legislative procedures." *Carver*, 102 F.3d at 100.  "This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 774 (3d Cir. 2000).  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54.

A review of the relevant case law satisfies this Court that Defendants' actions were substantively legislative.  In *Bogan v. Scott-Harris*, the act at issue involved the elimination of the plaintiff's position as part of a larger downsizing effort.  *Bogan*, 523 U.S. at 46.  The Supreme Court of the United States determined that such an action was substantively legislative, holding, "The ordinance reflected

4

a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.  Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office." *Id.* at 55-56.

Conversely, in *In re Montgomery County*, the act at issue targeted a particular employee whose job was terminated although not his position.  The United States Court of Appeals for the Third Circuit distinguished this situation, holding, "Firing a particular employee is a personnel decision that does not involve general policy making.  Appellants' firing of Wright did not reach beyond the particular occupant of the office.  Nor was their action an integral step in the legislative process."  *In re Montgomery County*, 215 F.3d at 377 (quoting *Bogan*, 523 U.S. at 55-56).  Accordingly, the Third Circuit determined that such an action could not be considered substantively legislative and the decision-makers were not entitled to immunity on that decision.

Based on the information currently before the Court, the situation at hand appears to be more analogous to that of *Bogan*, given that the entire weatherization department was eliminated from the County government with its resulting privatization.  It is likely that Defendants' decision to eliminate the Weatherization Department involved "a matter of general policy, applicable to a variety of

circumstances" and "a range of County employees." *In re Montgomery County*, 215 F.3d at 376.  Consequently, this Court has no difficulty finding that Defendants have demonstrated a likelihood that the act at issue here was substantively legislative.  Importantly, Plaintiffs have not argued against this determination.

Rather, Plaintiffs argue that Defendants' actions were not procedurally legislative because they did not enact an ordinance.  In support of this contention, Plaintiffs cite to several cases, all of which held that the defendants' activities were not procedurally legislative because they failed to enact an ordinance.  However, Plaintiffs' arguments on this point are misleading in that they overlook a detail crucial to each of those determinations: in each case the decision was predicated entirely on the Pennsylvania Borough Code which requires that every legislative act be accomplished by an ordinance.  Because the Defendant in this case is a Pennsylvania county and is not required to abide by the Borough Code, these decisions are inapposite.

For instance, in *Donivan v. Dallastown Borough*, the Third Circuit determined that the borough council members' action in abolishing the police department was not entitled to immunity because there had been no ordinance and therefore the act was not procedurally legislative.  *Donivan v. Dallastown Borough*, 835 F.2d 486, 489 (3d Cir. 1987).  In so holding, the court explicitly

6

relied upon Pennsylvania Borough Code, which described the borough's legislative powers as follows: "The legislative powers of boroughs . . . shall be exercised by or based on an ordinance.  All other powers shall be exercised by vote of the majority of council present at the meeting unless otherwise provided. . . ." *Id.* at 488 (quoting 53 P.S. § 46006(3)[1]).  The court did not, as Plaintiffs attempt to suggest, create a blanket rule that every legislative action must be done through ordinance in order to be considered procedurally legislative.  Rather, the court relied on settled precedent which stated that an action is procedurally legislative if it is passed "by means of established legislative procedures." In *Donivan*, that established legislative procedure was detailed by the Pennsylvania Borough Code, which required the enactment of an ordinance.  *Donivan* does not, however, dictate the same result in a situation in which the Borough Code is not the applicable procedural law.

In *Behne v. Halstead*, the court relied upon *Donivan* in holding that because the Borough of Newport operated under the Pennsylvania Borough Code, the defendants were required to abolish the police department by ordinance, rather than by resolution.  *Behne v. Halstead*, Civil No. 1:13-CV-0056, 2014 WL 1689950, at * 10 (M.D.Pa. April 29, 2014) (Rambo, J.).  It determined, specifically, that "[b]ecause Defendant Council Members' actions in passing a

---

[1] This version of the Pennsylvania Borough Code has since been repealed.  The more recent version of the relevant section of the Borough Code can be found at 8 Pa.C.S.A. § 3301.1.

resolution did not conform to the ordinance procedure set forth in the Borough Code and required by the Third Circuit, they are not entitled to legislative immunity." *Id.* at * 11.[2]

The analogous code for Northumberland County, the Pennsylvania County Code, maintains no such requirement that an ordinance be enacted to accomplish a legislative act.  Rather, the County Code states, "The board of commissioners may adopt *resolutions and ordinances* prescribing the manner in which powers of the county shall be carried out and generally regulating the affairs of the county." 16 P.S. § 509 (emphasis added).  The decision to privatize the Weatherization Department is clearly one which generally regulates the affairs of the county.  Such a decision need not be made by ordinance; the County Code unambiguously states that the board of Commissioners can also make this decision through resolution. This, then, constitutes the "established legislative procedure" by which Defendant commissioners were bound to abide.  Though Plaintiffs have argued that the Pennsylvania County Code required Defendants to act by ordinance, this is not accurate.  Though the County Code details the procedures which must be followed

---

[2] Plaintiffs cite to two additional district court cases in support of their proposition, *Long v. Bristol Township* and *Carroll v. Clifford Township*.  Though these cases do not involve a defendant borough, both rest their decision on *Donivan*, which unequivocally premises its decision on the explicit language of the Pennsylvania Borough Code. *See Long v. Bristol Township*, Civil Action No. 10-1069, 2012 WL 2864410, at * 15-16 (E.D.Pa. July 11, 2012); *Carroll v. Clifford Township*, Civil Action No. 3:12-0553, 2013 WL 6244558 at * 6 (M.D.Pa. Dec. 3, 2013) (Mannion, J.). Importantly, however, these cases merely cite to *Donivan* without explaining why that case was on point.  The Court today finds that *Donivan* is highly fact-specific and dependent on the governing regulations of each potential defendant.  It is relevant here only as an example of what could constitute "established legislative procedure" in a given situation.  To the extent *Long* and *Clifford* have determined otherwise, this Court respectfully disagrees.

in order to enact an ordinance, it similarly allows the county commissioners to pass an action by resolution.  By the explicit wording of the County Code, there are no such strenuous procedures which must be followed in order for county commissioners to enact a resolution. 16 P.S. § 509.

Moreover, Supreme Court precedent lends further support to this Court's determination that there can be no blanket rule requiring an ordinance to pass any and all legislative measures within local government.  In *Powell v. McCormack*, the Supreme Court held that federal legislators were entitled to immunity for words spoken in debate, "[c]ommittee reports, resolutions, and the act of voting." *Powell v. McCormack*, 395 U.S. 486, 501 (1969).  Though this case dealt with immunity for federal legislators under the Speech and Debate Clause of the Constitution, subsequent case law has clarified that the immunity available to local legislators is comparable. *See Freedom from Religion Foundation, Inc. v. Saccone*, 894 F.Supp.2d 573, 583 (M.D.Pa. 2012) (Conner, J.) ("It is pellucidly clear that resolutions, whether passed by a single house or both, whether creating legally binding obligations or not, fall squarely within the scope of absolute legislative immunity from suit.").

Based on the information available to the Court at this preliminary stage, Defendants Bridy and Clausi have demonstrated a likelihood that their actions were procedurally legislative and that they are therefore entitled to absolute

9

legislative immunity with regard to Plaintiffs' § 1983 claim.  Accordingly,

Plaintiffs have failed to show a likelihood of success on that claim as against these

two Defendants.

## B. Plaintiffs' § 1983 Claim Against the County

1. <u>Likelihood of Success on the Merits</u>

Unlike the individual Defendants, Defendant Northumberland County does

not enjoy an absolute legislative immunity for the legislative actions of its county

commissioners. *See Carver v. Foerster*, 102 F.3d 96, 102-4 (3d Cir. 1996) ("We

therefore will not undercut core doctrines of Constitutional law by applying

legislative immunity to municipalities under § 1983.").  Accordingly, this Court

must evaluate the merits of Plaintiffs' § 1983 claim against the County.  Plaintiffs

appear to argue that because the decision of the county commissioners can be

characterized as a decision officially adopted and promulgated by the County, the

County is liable to them under their § 1983 claim.  Though Defendants concede

that the County is not entitled to absolute legislative immunity, they argue that

Plaintiffs are nevertheless unlikely to succeed on the merits of their claim because

they have failed to adduce sufficient evidence to demonstrate that their First

Amendment rights were violated.

An analysis of the County's liability must necessarily begin with the

Supreme Court's decision in *Monell v. Department of Social Services of City of*

*New York*.  In that case, the Supreme Court determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. 658, 694 (1978).  A policy is a decision of a municipality's "duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-4 (1997); *see also Kocher v. Larksville Borough*, 548 Fed.Appx. 813, 821 (3d Cir. 2013).  A custom is any practice "that has not been formally approved by an appropriate decisionmaker" but "is so widespread as to have the force of law." *Id.* at 404.

Following a determination that the defendant municipality acted under an appropriate policy or custom, "[t]he plaintiff must also demonstrate that through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* Specifically, this means that a plaintiff must demonstrate that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

In this case, Plaintiffs have adequately demonstrated the existence of a policy because the decision to eliminate the Weatherization Department was made by Northumberland County's duly constituted legislative body in the form of its board of commissioners.  However, Plaintiffs must still prove fault and causation. With regard to fault, this Court will consider whether Plaintiffs have demonstrated that they suffered a constitutional violation; that is, whether they have demonstrated a likelihood that Defendant Clausi voted to eliminate the department on the basis of his union animus.

Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 815 (1985).  To establish a claim under 42 U.S.C. § 1983, Plaintiffs must initially demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law. *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).  The right to join a union and advocate for that union are rights guaranteed by the First Amendment.  *See Thomas v. Collins*, 323 U.S. 516, 532 (1945) ("The right thus to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly."); *see also Roberts v. U.S. Jaycees*, 468 U.S.

12

609, 622 (1984) ("[I]mplicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.").

The Third Circuit has adopted a test to evaluate a claim of retaliation for engaging in activity protected under the First Amendment. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). The plaintiff must establish: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). To satisfy the causal inquiry under the third prong of the test, a plaintiff must prove that his protected activity was "a substantial or motivating factor" in the retaliatory action. *See Hill v. Borough of Kutztown*, 455 F.3d 255, 243 (3d Cir. 2006). A plaintiff is not required to prove "but-for" causation in order for the court to decide this element in his favor. *See Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000). Rather, he need only prove that the decision was motivated in part by protected conduct before the burden shifts to the defendant to prove a lack of "but-for" causation. *See id.* It is this final element that Defendants argue Plaintiffs have not adequately proven to support a likelihood of success on the merits of their claim.

13

Defendants argue primarily that Plaintiffs have failed to demonstrate causation because the temporal proximity between the protected activity and the allegedly retaliatory conduct is not unduly suggestive and Plaintiffs have not pointed to other types of circumstantial evidence to demonstrate causation. They contend that the three allegedly anti-union statements made by Defendant Clausi are insufficient to demonstrate that union activity was a "substantial or motivating factor" in his decision to eliminate the department. Rather, they point to Defendant Clausi's response at the evidentiary hearing that his motivation for voting to eliminate the department was in order to "shrink the government."

The Court finds these arguments to be unconvincing. To begin with, Defendants significantly minimize Defendant Clausi's most recent statements and his testimony at the evidentiary hearing. He testified that "when the union is trying to tell the county what to do, then we have to go in a new direction." Preliminary Injunction Transcript, Day One, at 31:18-19 (hereinafter "Day One"). He went on to state that "I'm telling you when the union can't talk to the boss and he can't talk to the employer, [then it's] time to go." *Id.* at 32:4-5. Despite Defendants' attempt to characterize these statements as indicating the appropriate separation of authority, Defendant Clausi's animus towards Plaintiffs' union is evident. Though unions and employers perform very separate functions, they must necessarily work together. The purpose of a union is to advocate for its members; the employer

14

cannot simply eliminate a union position because the union has gotten too controlling or demanding for his taste.

It is true that no testimony stated the exact timing of these statements. However, Defendants' argument that there is no indication in the record as to their timing is disingenuous. Defendant Clausi specifically stated that he was unable to communicate with the Plaintiffs to apprise them of his intention to eliminate the department because the union prevented him from speaking directly to his employees. *Id.* at 32:11-16 ("[O]nce they signed agreements against me, they could not talk to the employer."). Plaintiff Scicchitano clarified that they complained to their union in January of the current year and it was then that the union told Defendant Clausi that he was no longer allowed to communicate directly with the Plaintiffs. *Id.* at 171:14-18. It was within the context of this dispute that Defendant Clausi articulated the afore-mentioned statement. Three months later, the county commissioners voted to eliminate the Weatherization Department.

Although the additional statements allegedly made by Defendant Clausi occurred too long ago to provide concrete circumstantial evidence that he chose to eliminate the weatherization department *at this time* based on Plaintiffs' union

activity, they do lend credence to the Plaintiffs' argument that he held an animus towards unions.[3]

Moreover, although other witnesses testified that there were valid reasons to privatize the Weatherization Department,[4] nothing in Defendant Clausi's testimony demonstrates that these were his actual reasons for eliminating the department. Rather, his only elaboration on his motivation for eliminating the department was that he wanted to "shrink the government." He mentioned in the evidentiary hearing that the program was eliminated because of its cost. *Id.* at 32:8-10. However, when pressed, it was apparent to this Court that Defendant Clausi had done little, if any, research on the subject and was unaware as to whether or not privatization of the department would actually save the County and its taxpayers money.

Furthermore, Defendants argue that Defendant Clausi was initially against eliminating the Weatherization Department when it was proposed two years ago. They contend that his objection to its elimination was because at that time it was a well-run program, the implication being that at the present time it is no longer well run at a state-evaluated level 3. However, the record does not support such an

---

[3] The first of these statements occurred four years ago, when Defendant Clausi exclaimed "F--- the union" during the time of union negotiations. The second statement occurred approximately two and a half years ago when Defendant Clausi told Plaintiffs Scicchitano and Bollinger that they would receive raises if they were not in the union. Plaintiff characterizes this statement as an offer of promotion in exchange for renunciation of the union. Defendant, on the other hand, characterizes the statement as one of fact, explaining that if they were to be promoted, they would necessarily lose their membership on the basis of their management positions.

[4] Most notably, that testimony related to the fact that Northumberland County is one of only two counties in Pennsylvania which operates the program on their own and the superior ranking of the private agency, SEDA-COG.

interpretation of Defendant Clausi's motive.  Rather, Defendant Clausi testified that he voted to keep the department because at the time the County "had money coming in.  Now the money is dried out." *Id.* at 35:23-25 and 36:1.  He was, however, unable to explain in what way there was money coming into the County two years ago that has now ended.

Although a legislator need not ordinarily have an intelligent and well-reasoned motivation for their legislative decisions, Defendant Clausi's suggested motivation for eliminating the department rings hollow given his lack of knowledge on the topic of privatization and his explicitly anti-union statements. Importantly, Defendants have failed to establish that the same decision would have resulted even had Plaintiffs' union activity not been considered. *See Suppan*, 203 F.3d at 235.

Finally, in a case such as the one before this Court, causation is not typically at issue because the Court has already determined that the Plaintiffs have proven a likelihood that Defendant Clausi acted intentionally to punish them for their union membership.  "[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Brown*, 520 U.S. at 405 (explaining that it is ordinarily only in cases where the policy or custom itself is lawful that the plaintiff

will have a difficult time proving that the municipality caused the ultimate deprivation of federal rights).

Two of three county commissioners voted in favor of the decision to eliminate the Department of Weatherization.  Plaintiffs have adequately demonstrated a causal link on Defendant Clausi's part between that decision and his anti-union animus and, without his favorable vote, the department would not have been eliminated.  Consequently, Plaintiffs have demonstrated a likelihood of success on the merits of their §1983 claim against Defendant Northumberland County.

2. Irreparable Injury to Plaintiffs

Next, Plaintiffs must prove that they will suffer irreparable injury in the absence of a preliminary injunction.  They argue, based on Supreme Court precedent, that the fact that their First Amendment rights are being infringed upon is sufficient, in and of itself, to create irreparable harm.  Defendants respond that the assertion of First Amendment rights does not automatically require a finding of irreparable injury; rather Plaintiffs must prove that the Defendants eliminated the department to directly penalize the Plaintiffs for their union activity and in order to prevent them from being union members.  They contend further that Plaintiffs have established no evidence that they will be unable to remain in the union, even if they ultimately lose their jobs with the County.

In *Elrod v. Burns*, Republican employees within the sheriff's office requested a preliminary injunction, alleging that they had been fired or were being threatened with dismissal because they were not affiliated with or sponsored by the political party of the current sheriff.  *Elrod v. Burns*, 427 U.S. 347, 350 (1976). The Supreme Court considered the issue of whether the plaintiffs had sufficiently proven irreparable harm, and in determining that the plaintiffs had proven irreparable harm, the court unambiguously held, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* Even though most of the plaintiffs had already been terminated from their positions at the time of their request for preliminary injunction and could therefore continue to affiliate with their chosen political party, the court effectively held that their injury was still "occurring" for purposes of the irreparable harm analysis.  *Id.* at 374 ("Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying the preliminary injunctive relief.").

The Third Circuit has elaborated on this Supreme Court holding in *Hohe v. Casey*.  In *Hohe*, non-union members sought a preliminary injunction to prevent implementation of certain portions of the collective bargaining agreement between

19

the state and the union.  *Hohe v. Casey*, 868 F.2d 69, 71 (3d Cir. 1989).  In denying

the preliminary injunction, the Third Circuit limited the application of *Elrod*,

holding that "the assertion of First Amendment rights does not automatically

require a finding of irreparable injury, thus entitling a plaintiff to a preliminary

injunction if he shows a likelihood of success on the merits." *Id.* at 72-73.  The

court went on to clarify, "Accordingly, it is the direct penalization, as opposed to

incidental inhibition, of First Amendment rights which constitutes irreparable

injury." *Id.* at 73.

The case at bar is almost entirely analogous, factually, to *Elrod*, in which the

plaintiffs asserted retaliation in the form of termination for exercise of their First

Amendment freedom of association rights.  Here, Plaintiffs' positions have been

effectively terminated.  Although Defendants argue that none of the Plaintiffs have

received notice of their termination, they do not dispute that Plaintiffs will lose

these jobs when their department is eliminated.  The elimination of a position

necessarily entails that the employee in that position will be terminated.  Whether

the Plaintiffs will be rehired in another department or position is irrelevant to the

question of whether they have been terminated from *these* positions.

Though Defendants have cited to *Hohe*, they misinterpret what the Third

Circuit has required a plaintiff to prove to support a claim of irreparable harm.

They argue that *Hohe* required Plaintiffs to prove that: (1) the decision to disband

20

the Weatherization Department was to penalize the Plaintiffs because of their union activity; and (2) the decision was made so that Plaintiffs could no longer be union members.  Such an interpretation is unsupported.  Rather, the *Hohe* court said, "[I]t is the direct penalization, as opposed to the incidental inhibition, of First Amendment rights which constitutes irreparable injury." *Id.* Thus, Defendants are correct in stating that Plaintiffs must prove that Defendants intended to penalize them for their union activity.  However, nowhere in that case does the court require Plaintiffs to prove that Defendants also intended to prevent the Plaintiffs from exercising those First Amendment rights in the future.

As discussed above, Plaintiffs have demonstrated a likelihood that the factfinder would determine that Defendant Clausi voted in favor of elimination of the department because Plaintiffs were union members.  This is sufficient to demonstrate that Defendant Clausi intended to directly penalize them because of their union activities.  Accordingly, this Court holds that the Plaintiffs are suffering and will continue to suffer irreparable harm in the absence of preliminary injunctive relief.

3. Balance of Harms

After determining that Plaintiffs would suffer irreparable injury in the absence of injunctive relief, this Court must then balance that injury with any harm that would be suffered by the Defendants if the preliminary injunction were to be

21

entered.  Plaintiffs argue that Defendants will suffer no injury whatsoever if they were required to keep the program open in Northumberland County because the program is federally funded and it actually generates income and jobs for the County.  Defendants contend in response that it is a false assertion that the department has no effect on County funding because the County pays the administrative costs of the program.  Neither party has addressed this issue in their post-hearing briefs.

Based on the testimony at the evidentiary hearing, it is clear to this Court that the weatherization program is at least intended to require no out of pocket cost on the part of the County.  Rather, the program is federally funded entirely through the state, including salaries and administrative costs. Day One at 128:3-13.  The only costs that the County is required to cover are indirect costs or unallowable costs.  *Id.* at 146:20-25; 147:1-2.  Northumberland County Controller Christopher Grayson testified that there was one time that he could remember in which the County was required to expend their own resources to cover indirect or unallowable costs associated with the program, demonstrating that the likelihood that the County will be made to pay for the program is minimal.  *Id.* at 152:20-24.  Moreover, even the amount expended in 2013 was apparently nominal in comparison to the County's budget. *Id.* at 36:14-16; 152:23-24.

22

The only remaining concern for this Court would be the current lack of funding for the Northumberland County weatherization program.  Because the County had intended to outsource the program, which they had not done by the date of the June 4-5 evidentiary hearing, Defendants have not yet applied for funding from the state to operate the department.  It is this Court's belief that they will have little difficulty obtaining funding, given the testimony of Lynette Praster, Director of the Center of Community Services in the Department of Community and Economic Development (hereinafter "DCED"), that the DCED's preeminent concern is making sure that these services are available to the citizens of the County.  *Id.* at 131:14-16.  Consequently, this Court will, as a condition of this preliminary injunction, require Defendants to apply **in good faith** for funding for the weatherization program.  However, because this Court's determination that Defendants will suffer no harm is predicated on their ability to obtain funding for the program, if Defendants are unable to obtain that funding, even after making a good faith attempt, the parties may return to Court with that issue.

4. Public Interest

Finally, this Court must consider the interest of the public in deciding on the instant motion.  Plaintiffs initially argued that a preliminary injunction would serve the public interest because it would ensure the continued and uninterrupted services to the community members qualifying for services.  Defendants respond

23

that the public interest would not be harmed if the preliminary injunction were to be denied because the weatherization services are being outsourced, not eliminated, and therefore the citizens of Northumberland County will continue to receive these services.  Moreover, they contend, these services will be distributed in a more cost effective manner that will save the County money and allow more individuals and families to benefit from the services.  Neither party has addressed this issue through their post-hearing briefs.

The public interest appears to be neutral on this issue.  Ms. Praster testified that the primary concern at this juncture is that Northumberland County receive weatherization services; it is of less import which entity provides those services. Day One at 131:14-16.  There was no testimony at the evidentiary hearing to indicate that the citizens of Northumberland County would receive better quality or more efficient services from either entity.  Moreover, though Defendants argue that the public interest would not be harmed if the preliminary injunction were not granted, they make no argument that the public would be harmed if it were granted.

Defendants did elicit testimony at the hearing that SEDA-COG would be a more efficient provider of services; however, they provided no evidence from which the Court could evaluate the accuracy of that statement. *Id.* at 59:11-22; 74:19-25. When asked whether the Northumberland County residents would

receive the same volume of services from SEDA-COG, given that SEDA-COG

provides services to seven counties, Defendant Bridy responded that he was

unsure.  *Id.* at 74:5-9; 21:18-20.

Additionally, there was considerable discussion at the hearing regarding the

ratings of the potential providers, with SEDA-COG listed at a level one, whereas

Northumberland County is currently rated at a level three.  *Id.* at 127:14-20.  This

is indeed something for this Court to consider in determining whether a

preliminary injunction should issue.  However, based on the testimony of Ms.

Praster, it does not appear that this difference in ranking so significantly changes

the quality of services that the Northumberland County citizens would receive.  *Id.*

("There are currently some outstanding monitoring findings that need to be

resolved.  But they are at what we call a level three in their performance standards,

which we have levels one through four.  Level one is having very few issues noted

to performance, and then it goes from there.  They have some outstanding

monitoring findings that need to be resolved."); *Id.* at 131:12-14 ("They have done

appropriate work, appropriate weatherization work.  A lot of their findings were

not necessarily related to the actual work itself but other things around that.").

Finally, based on the principle that "[i]n the absence of legitimate,

countervailing concerns, the public interest clearly favors the protection of

constitutional rights" *Council of Alternative Political Parties v. Hooks*, 121 F.3d

876, 883-84 (3d Cir. 1997), the Court finds that the public interest favors the granting of a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motion for preliminary injunctive relief.  In doing so, the Court is mindful of Justice Frankfurter's admonition that "[i]n times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed.  Courts are not the place for such controversies.  Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses." *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951).  Nevertheless, in certain instances, such as the one before the Court today, such judicial intervention is appropriate and even necessary.  Consequently, the commissioners' vote to eliminate the Department of Weatherization is hereby revoked and Defendants are prohibited from eliminating the department on the basis of the Plaintiffs' union activity.  Moreover, Defendants are directed to apply in good faith for the funding to operate the weatherization program.  An appropriate Order follows.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge