IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| DWAYNE SCICCHITANO, PAMELA BOLLINGER, ROBERT MCANDREW, DAVID YAKOBOSKI, BARRY SCHWEITZER, JAMES BRESSI, and ALBERT BENEDICT | : : : : : : : : : | Civ. No. 4:15-CV-00852 |
| | : | (Judge Brann) |
| Plaintiffs, | : : : : | |
| v. | : : : | |
| COUNTY OF NORTHUMBERLAND, VINNY CLAUSI, and STEPHEN BRIDY, | : : : : | |
| Defendants. | : | |

**MEMORANDUM**
September 17, 2015

Pending before this Court is a Motion to Dismiss Plaintiffs' Amended

Complaint filed by Defendants Stephen Bridy and Vinny Clausi for failure to state

a claim upon which relief can be granted pursuant to Federal Rule of Civil

Procedure 12(b)(6). Defendants argue that, as County Commissioners, they are

entitled to legislative immunity on the actions at issue in the amended complaint

and, therefore, they must be dismissed from the action. Though Defendants have

not filed a reply brief, the time for filing has passed and the motion is now ripe for

disposition. In accordance with the following reasoning, Defendants' motion to dismiss is denied.

## I. BACKGROUND

Plaintiffs are currently employees of the Northumberland County Weatherization Department (hereinafter "Weatherization Department"). Pls.' Amended Complaint ¶ 1-7, 13, May 8, 2015, ECF No. 4 (hereinafter "Pls.' Complaint"). Defendants Stephen Bridy and Vinny Clausi are currently employed as the Northumberland County Commissioners. *Id.* ¶ 9-10. By virtue of their employment with Northumberland County, Plaintiffs are union members, a fact known to the Defendants. Id. ¶ 14. In fact, Plaintiffs' allege, Defendant Clausi has openly expressed his antagonism towards union and his desire to privatize all or most of the County departments for the explicit purpose of eliminating unionized employees. Id. ¶ 15-16.

The Weatherization Department is a program meant to reduce energy consumption in low-income households. Id. ¶ 20. It is federally funded through the Department of Community and Economic Development (hereinafter "DCED"). *Id.* ¶ 17. The program therefore operates at no cost to the County, and, apparently, generates revenue for the County. Id. ¶ 18. Currently, Northumberland County has a contractual agreement with DCED to provide weatherization services through June 30, 2016. *Id.* ¶19.

Applicants for weatherization services must be financially eligible for those services and, additionally, each home must meet certain conditions in order to qualify. Put another way, a person can only receive services if they are financially eligible and the conditions of the home and/or heating system are in such a state of disrepair that they qualify. *Id.* ¶ 21-22.

After Defendant Clausi became a County Commissioner, it was not unusual for him to contact Plaintiffs Scicchitano and Bollinger and instruct them to provide services to a particular individual, even if they were not eligible for one reason or another. *Id.* ¶ 22, 24. One such instance occurred with Defendant Clausi's father in law, Kenneth Zeek. *Id.* ¶ 25. Although Mr. Zeek was financially eligible for the program, his furnace did not meet the requirements for being in such a state of disrepair that it should be replaced. *Id.* ¶ 26. However, after Mr. Zeek was advised that he did not qualify for a new furnace, Plaintiff Scicchitano received a phone call from Defendant Clausi who instructed him to give Mr. Zeek a new boiler and threatened to shut down the Weatherization Department if he did not comply. *Id.* ¶ 27. Fearful of losing their jobs, Plaintiffs complied. *Id.* ¶ 28.

In another instance, Defendant Clausi threatened several of the Plaintiffs with closure of the department if they did not provide his close friend, Vincenza Musso, with weatherization services, even though her ventilation system was not in such a state of disrepair that she qualified for the services. *Id.* ¶ 29, 30. Again,

fearful of losing their jobs, Plaintiffs provided Ms. Musso with first a new boiler and then a new radiator. *Id.* ¶ 31.

Shortly thereafter, in September 2014, Plaintiff Scicchitano contacted Tony Kimmel, the Monitoring Supervisor of DCED, to make specific reports regarding Defendant Clausi's threats and demands and the Zeek and Musso situations. *Id.* ¶ 32. Mr. Kimmel instructed Plaintiff Scicchitano to get statements from several other weatherization employees, all of whom are Plaintiffs in the current action, and from a non-party private contractor, Jim Olcese. *Id.* ¶ 33. Shortly after Plaintiff Scicchitano requested a statement from Mr. Olcese, who Plaintiffs allege is friends with Defendant Clausi, Defendant Clausi's wife appeared at the home of Plaintiff Bollinger. *Id.* ¶ 35. Mrs. Clausi questioned Plaintiff Bollinger regarding the reports made to Mr. Kimmel and called her husband, Defendant Clausi, placing him on speakerphone. *Id.* ¶ 36. While on the phone, Defendant Clausi questioned Plaintiff Bollinger about the reports and requested that she place a note in the Zeek file stating that he had requested that everything be "done by the book." *Id.* ¶ 37. He further instructed her that no one could ever know that he talked to her about the situation or that Mrs. Clausi was at her home. *Id.* ¶ 37. The next day, Plaintiff Scicchitano was suspended with pay for a week based on the accusation that he was forcing Plaintiffs Bollinger and McAndrew to make false statements. *Id.* ¶ 38.

Then, in January 2015, Mr. Olcese told Plaintiffs Bollinger and McAndrew that the Weatherization Department was going to be shut down after May 2015, because it was the only way that they could get rid of Plaintiff Scicchitano, due to his union protection. *Id.* ¶ 39. In February 2015, Plaintiffs sent a written statement to Human Resources indicating that Defendant Clausi had threatened to shut down the department if it did not provide services to Ms. Musso, who did not qualify. *Id.* ¶ 40. The letter further stated that Plaintiffs were fearful of losing their jobs or being charged with fraud for going against state and federal guidelines due to Defendant Clausi's threats. *Id.* ¶ 41.

During the Board of Commissioners meeting held on April 7, 2015, Defendants Clausi and Bridy voted to eliminate the Weatherization Department, effective June 30, 2015. *Id.* ¶ 42. The current lawsuit ensued, in which Plaintiffs requested injunctive relief to prevent the County from closing the Weatherization Department on June 30, 2015. On June 26, 2015, this Court granted Plaintiffs' request for preliminary injunctive relief. Individual Defendants Clausi and Bridy now request this Court to dismiss Plaintiffs' amended complaint inasmuch as it is asserted against them.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true

and construe all inferences in the light most favorable to plaintiff. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. *See Kost*, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact

6

pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa.

May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a

'short and plain statement of the claim showing that the pleader is entitled to relief,'

in order to 'give the defendant fair notice of what the…claim is and the grounds on

which it rests,'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41,

47 (1957)). However, even under this lower notice pleading standard, a plaintiff

must do more than recite the elements of a cause of action, and then make a

blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at

*3. Instead, a plaintiff must make a factual showing of his entitlement to relief by

alleging sufficient facts that, when taken as true, suggest the required elements of a

particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled

to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation

by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490

U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where

there is a "dispositive issue of law." *Id*. at 326. If it is beyond a doubt that the

non-moving party can prove no set of facts in support of its allegations, then a

claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id*. at 327.

## III. DISCUSSION

Defendants argue that they are entitled to absolute legislative immunity for their actions in terminating the Weatherization Department, because the vote they took was both substantively and procedurally legislative. Plaintiffs counter that Defendants' actions were not procedurally legislative because they did not follow the correct procedure for enacting an ordinance, as required by the Pennsylvania County Code. They further argue that Defendants' actions were not substantively legislative because the Defendants engaged in a course of illegal and unconstitutional pre-vote harassment, threats, and retaliation for over a year which were aimed at Plaintiffs' jobs; moreover, they ultimately structured their retaliatory act in such a way as they believed would grant them immunity. However, these legal issues are exceptionally fact-specific, and, as discussed below, the Court will reserve its decision on them pending a more developed factual record.

Local legislators are absolutely immune from liability for their legislative activities. *See In re Montgomery County*, 215 F.3d 367, 376 (3d Cir. 2000) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)). However, to be entitled to legislative immunity, the act taken must be both substantively and procedurally legislative in nature. *See id.* (citing *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir.

8

1983)). An act is considered substantively legislative if it involves policy-making of a general purpose or line-drawing. *See Ryan v. Burlington County*, 889 F.2d 1286, 1290 (3d Cir. 1989). It is procedurally legislative if it is passed "by means of established legislative procedures." *Carver*, 102 F.3d at 100. "This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 774 (3d Cir. 2000). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54.

At this stage in the litigation, Plaintiffs have pled that Defendants took a vote to eliminate the Weatherization Department during a County meeting. They have further alluded to some of the Defendants' possible motives in doing so. Though Defendants argue that it is obvious on the face of the amended complaint that their actions are both procedurally and substantively legislative, this is far from clear to this Court. While this is entirely possible, a determination of the application of absolute legislative immunity is very fact-specific and highly dependent on the nature and circumstances of the action. Without the benefit of a more developed factual record, particularly in regard to whether the vote was procedurally legislative, the Court cannot conclusively grant or deny that

9

immunity.  Consequently, Defendant's motion to dismiss is denied, although

Defendants are free to raise the issue of absolute legislative immunity at a later

stage in the litigation.[1]

## IV. CONCLUSION

In accordance with the foregoing reasoning, Defendants' motion to dismiss

is denied.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[1] The Court notes that it decided in its Memorandum Opinion of June 26, 2015 that Defendants had demonstrated a likelihood of success on the merits of their absolute legislative immunity defense.  However, as counsel clearly appreciate, the Court did not conclusively decide the issue and, moreover, the posture of the current motion prevents the Court from considering any information outside of Plaintiffs' amended complaint.